**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 0 8 2026

KEVIN P WEIMER, Clerk
By_____ Deputy Clerk

DANIELLE W. JOHNS,

    Plaintiff pro se,

v.

GOOGLE LLC,

    Defendant.

**1:26-CV-3824**

Civil Action File No. _____

**JURY TRIAL DEMANDED**

**PRO SE EMPLOYMENT DISCRIMINATION COMPLAINT**

### I. CLAIMS AND JURISDICTION

1. This employment discrimination lawsuit is brought under the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., for employment discrimination on the basis of disability and retaliation for exercising rights under this statute. Plaintiff also asserts a claim of retaliation under the ADA for engaging in protected activity, including requesting reasonable accommodations, taking approved medical leave, and filing internal complaints regarding discriminatory treatment.

2. This Court has subject matter jurisdiction over this case under the above-listed statute and under 28 U.S.C. §§ 1331 and 1343.

### II. PARTIES

3. Plaintiff Danielle W. Johns is an individual currently residing at 61 Sherrin Street, Hyde Park, Massachusetts 02136. Plaintiff was employed by Defendant Google LLC based in Atlanta, Georgia from May 20, 2024 through June 17, 2025, and previously in San Francisco, California from July 18, 2022 through April 5, 2024.

4. Defendant Google LLC is a limited liability company organized and existing under the laws of the State of Delaware, and is authorized to do business in the State of Georgia. Defendant's Atlanta, Georgia office is located at 1105 W Peachtree St NW, Atlanta, Georgia 30309.

1

### III. LOCATION AND TIME

5. The alleged discriminatory conduct occurred in connection with Plaintiff's employment at Defendant's Atlanta, Georgia office located at 1105 W Peachtree St NW, Atlanta, Georgia 30309, from May 20, 2024 through June 17, 2025.

### IV. ADMINISTRATIVE PROCEDURES

6. Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2026-01740. A copy of the EEOC charge is attached here as Exhibit A.

7. Plaintiff received a Notice of Right to Sue letter from the EEOC on April 13, 2026. A copy of the Notice of Right to Sue is attached here as Exhibit B. This complaint is filed within ninety (90) days of Plaintiff's receipt of that notice.

8. Plaintiff was not employed by a State or Federal agency and did not file a complaint with the Georgia Commission on Equal Opportunity.

### V. NATURE OF THE CASE

9. The conduct complained of in this lawsuit involves: (a) failure to accommodate Plaintiff's disability; (b) harassment; (c) retaliation; (d) termination of Plaintiff's employment; and (e) working under terms and conditions of employment that differed from similarly situated employees.

10. Plaintiff believes she was discriminated against because of her disability or perceived disability, specifically anxiety disorder and pancreatic condition, and in retaliation for requesting reasonable accommodations, taking approved medical leave, and engaging in protected activity by filing internal complaints regarding discriminatory and retaliatory treatment.

### VI. STATEMENT OF FACTS

11. Plaintiff Danielle W. Johns is an experienced analytics and strategy professional. She holds degrees from Duke University, American University, and the University of Miami, and has experience in data science, AI, machine learning, measurement strategy, and client-facing business support. Plaintiff previously held a secret-level security clearance with the United States Department of State, reflecting an extensive federal background check affirming her character, integrity, and trustworthiness.

12. Plaintiff was previously employed by Defendant as an Analytical Lead in San Francisco, California from July 18, 2022 through April 5, 2024. During that employment, in 2022, Defendant rated Plaintiff's performance as "Significant Impact," praised her as an "outstanding addition," and recognized her contributions to client analytics, incrementality testing, and team alignment.

13. On May 20, 2024, Plaintiff returned to Defendant's employ as an Analytical Lead based in Atlanta, Georgia, reporting to manager Neelima Kodumuri. Plaintiff's role required analytical support, measurement strategy, experimentation support, and data-driven insights for significant Google advertising clients, working with an account management

team, internally referred to as a "sales pod", that included account managers and account executives, reporting into a Head of Industry, their separate manager.

14. Shortly after beginning the Atlanta role, Plaintiff began experiencing serious medical issues, including heightened anxiety, insomnia, panic attacks, and a pancreatic attack, constituting disabilities within the meaning of the ADA. Plaintiff has a documented disability and was under the regular care of a therapist throughout her employment.

15. On or about July 9, 2024, Plaintiff met with Amy Mahoney, a Google Human Resources representative, to discuss her concerns and accommodation options. During that meeting, Plaintiff experienced heightened anxiety and emotional distress and disclosed the mental and physical toll her work environment was taking on her health.

16. On or about July 22, 2024, Plaintiff submitted a Work From Anywhere ("WFA") Hardship Request to Ms. Kodumuri, using the template provided by Defendant for this purpose, as a formal request for a reasonable accommodation. On July 24, 2024, Ms. Kodumuri denied the WFA Hardship Request, characterizing Plaintiff's accommodation request as a policy violation.

17. Plaintiff is informed and believes that Anushree Jindal, an Account Executive on one of Plaintiff's account management teams, received "special permission" from Defendant to work remotely from New York. Defendant provided this accommodation to Ms. Jindal with less resistance than it provided to Plaintiff, constituting disparate treatment of Plaintiff in connection with her disability and accommodation requests.

18. On July 24, 2024, while traveling for a client trip in Minneapolis, Minnesota, Plaintiff suffered an anxiety attack in public. Despite this medical event, Plaintiff made every effort to fulfill her work obligations during the trip. On July 25, 2024, Ms. Kodumuri and Head of Industry Lauren Hutchins held a meeting with Plaintiff primarily to criticize her for not presenting a slide during the client meeting, a meeting in which the client had directed the agenda and time had run out. When Plaintiff asked whether she was being held accountable for management's unstated expectations, Ms. Kodumuri and Ms. Hutchins confirmed she was.

19. On July 30, 2024, during a regular one-on-one meeting, Ms. Kodumuri raised the client meeting issue again. When Plaintiff asked whether Ms. Kodumuri wished to hear her account of what occurred, Ms. Kodumuri said no. Ms. Kodumuri subsequently sent a follow-up email that Plaintiff understood to be a performance warning, which inaccurately characterized their discussion, introduced new information not discussed, and referenced the WFA Hardship Request as a "wellness solution" despite having denied the request.

20. On or about August 1, 2024, Ms. Kodumuri called a meeting near the end of the workday during which she raised alleged performance issues. Plaintiff became emotionally distressed and began crying. During this meeting, Ms. Hutchins also began crying and stated, "I am sorry that you're so miserable." Ms. Kodumuri, who attended virtually, acknowledged that she had heard Plaintiff had requested medical leave, asked for more information, and smirked when Plaintiff declined to provide it.

3

21. On August 12, 2024, Plaintiff began approved medical leave managed by Sedgwick, Defendant's leave administrator. Plaintiff's medical leave was extended multiple times and continued through May 7, 2025. Defendant knew that Plaintiff's leave was medically based.

22. During Plaintiff's medical leave, Defendant completed a 2024 annual performance review of Plaintiff that relied on criticisms concerning lack of presence, absence, lack of engagement, communication, and availability — factors directly attributable to and inseparable from Plaintiff's medically protected leave. Although Plaintiff received an email notification that the review was available on February 10, 2025, Plaintiff did not see or review the notification until after returning from medical leave on May 7, 2025, as Plaintiff was on approved medical leave and maintaining appropriate distance from the named parties during that period. Plaintiff contends this review was discriminatory, retaliatory, and conducted in bad faith.

23. On February 7, 2025, Amy Mahoney sent an email to Plaintiff's work email falsely stating that Sedgwick had unsuccessfully attempted to reach Plaintiff on several occasions. This statement was inaccurate. As a result of a purported denial of a leave extension, Ms. Mahoney stated that Plaintiff was on unapproved leave and required a response by February 12, 2025. Plaintiff had already initiated the appeal process directly with Sedgwick, as was the expected procedure, upon learning of the denial.

24. On March 17, 2025, Plaintiff filed an internal complaint with Defendant detailing unfair, discriminatory, and biased treatment that had created a hostile work environment and caused medical issues. Plaintiff's complaint named Ms. Mahoney as a subject of the complaint. Despite this, Defendant assigned the complaint to Ms. Mahoney herself for resolution. By March 18, 2025, Ms. Mahoney had closed the complaint, stating she did not see evidence of a policy violation and only offering to "develop strategies to empower" Plaintiff to address such situations herself.

25. On March 19, 2025, Plaintiff escalated her complaint to Ms. Mahoney's manager, Sheela Rohr. Ms. Rohr declined to reassign the matter, stating that Ms. Mahoney was "best suited to support" Plaintiff given her knowledge of Plaintiff's cases. Defendant failed to conduct a meaningful independent investigation into Plaintiff's complaints.

26. Plaintiff returned to work on May 7, 2025, with approved medical accommodations, including a reduced Monday-through-Thursday schedule, scheduled breaks, and remote-work flexibility. Defendant, including management and Human Resources, was aware that these limitations were medically based.

27. On May 22, 2025, Plaintiff submitted a second internal complaint against Ms. Kodumuri, Ms. Mahoney, and Ms. Rohr regarding the 2024 annual performance review that had been completed while Plaintiff was on approved medical leave.

28. On May 29, 2025, Plaintiff and Ms. Kodumuri met in a regularly scheduled one-on-one meeting, which was recorded with Ms. Kodumuri's consent via Google's Gemini tool, as Ms. Kodumuri controlled the meeting invite and initiated the recording. During this meeting, the parties discussed the process for quarterly performance expectations.

29. Around the end of May 2025 and early June 2025, Plaintiff received positive feedback from Ms. Kodumuri during a team meeting. On June 12, 2025, Plaintiff and Ms. Kodumuri

4

met and agreed to move forward and focus on the current year. These facts are inconsistent with the notion that termination was the inevitable result of a clear and progressive performance process, or that Plaintiff had been given a fair opportunity to succeed after returning from approved medical leave.

30. On June 2, 2025, Plaintiff filed an additional complaint regarding inconsistencies in her 2023 annual review from her prior California employment, in which her documented concerns about DV360 antitrust compliance had been recharacterized as performance issues, her complaints against an employee for attempting to impede her jury duty and another for bias and sexism had been characterized as 'specialist challenges' that were attributed to Plaintiff, and fault had been attributed to Plaintiff for a specific project failure on the DoorDash account despite Plaintiff having followed the explicit instructions of her then-manager, Joshua Ginsberg, for that project. This misattribution of blame is consistent with the pattern of discriminatory and disparate treatment Plaintiff experienced during her California employment. Defendant responded that no policies were violated.

31. On June 17, 2025, Ms. Kodumuri scheduled a one-on-one meeting that Ms. Mahoney subsequently joined. During this meeting, Plaintiff was terminated and immediately lost all corporate access. The stated basis for termination was alleged performance issues, which Plaintiff disputes as pretextual.

32. The timing of Plaintiff's termination, occurring within weeks of her return from approved medical leave with accommodations, after she had received positive feedback from her manager, and after multiple internal complaints regarding discriminatory and retaliatory treatment, demonstrates that the stated performance rationale was pretextual and that the termination was causally connected to Plaintiff's disability, her requests for accommodation, her protected medical leave, and her protected internal complaints.

33. Criticisms concerning availability, calendar blocks, responsiveness, missed communications, presence, and engagement, the bases cited for Plaintiff's termination, cannot fairly be separated from Plaintiff's approved medical leave and reduced work schedule. Defendant formally approved Plaintiff's accommodations and then penalized Plaintiff for their practical consequences. Beyond the accommodation-linked criticisms, Plaintiff's alleged performance failures were false, discriminatorily and retaliatorily attributed to Plaintiff, and were in fact caused by or attributable to the conduct of the account management team. Defendant's characterization of Plaintiff's performance was pretextual and designed to obscure the discriminatory and retaliatory nature of the termination decision.

34. On or around July 2025, Plaintiff learned that Defendant had falsely represented to the California Employment Development Department ("EDD") that Plaintiff had not worked for the Company and that Plaintiff was medically unable to work, in an effort to block Plaintiff's unemployment insurance benefits. Plaintiff submitted documentation refuting Defendant's false statements. This conduct constitutes an independent act of retaliation.

35. Plaintiff is a Black woman who was employed by Defendant in California from July 18, 2022 through April 5, 2024 in a non-legal analytical role during the class period covered by Curley et al. v. Google LLC (Case No. 4:22-cv-01735-KAW, N.D. Cal.), a racial discrimination class action against Defendant that settled for $50 million in May 2026

involving claims by current and former Black Google employees. This is referenced as background evidence of Defendant's pattern of discriminatory behavior and to support the pretextual nature of Defendant's stated justifications for its conduct toward Plaintiff.

36. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, lost benefits including salary, bonus opportunity, equity and RSU value, retirement benefits and contributions, and health insurance, emotional distress, reputational harm, and disruption to her career.

## VII. CAUSES OF ACTION

### Count I: Disability Discrimination in Violation of the ADA

37. Plaintiff realleges and incorporates by reference all preceding paragraphs.

38. Plaintiff has a documented disability within the meaning of the ADA, including anxiety disorder and pancreatic condition, which substantially limit one or more major life activities. Defendant was aware of Plaintiff's disability.

39. Defendant discriminated against Plaintiff on the basis of her disability by: (a) denying her reasonable accommodation request; (b) providing accommodations more readily to similarly situated employees without disabilities; (c) penalizing Plaintiff for the practical consequences of her approved accommodations; (d) completing a negative performance review during Plaintiff's protected medical leave; and (e) terminating Plaintiff's employment.

40. Defendant's conduct constitutes unlawful discrimination in violation of the ADA, 42 U.S.C. § 12112.

### Count II: Failure to Accommodate in Violation of the ADA

41. Plaintiff realleges and incorporates by reference all preceding paragraphs.

42. Plaintiff requested reasonable accommodations for her disability, including a Work From Anywhere Hardship Request and a modified work schedule. Defendant denied Plaintiff's initial accommodation request without engaging in the good faith interactive process required by law, characterizing the request as a policy violation. When accommodations were later approved, Defendant used Plaintiff's exercise of those accommodations as the basis for adverse employment actions, including termination.

43. Defendant's conduct constitutes a failure to accommodate in violation of the ADA, 42 U.S.C. § 12112(b)(5).

### Count III: Retaliation in Violation of the ADA

44. Plaintiff realleges and incorporates by reference all preceding paragraphs.

45. Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodations, taking approved medical leave, and filing multiple internal complaints regarding discriminatory and retaliatory treatment. Defendant retaliated against Plaintiff for this protected activity by: (a) escalating performance criticisms following Plaintiff's accommodation request; (b) completing a negative performance review during Plaintiff's

6

protected medical leave; (c) assigning Plaintiff's internal complaint to the very Human Resources representative named in that complaint; (d) terminating Plaintiff's employment within weeks of her return from approved medical leave; and (e) falsely representing to the California EDD that Plaintiff had not worked for Defendant and was medically unable to work, in an effort to block her unemployment insurance benefits.

46. There is a direct causal connection between Plaintiff's protected activity and Defendant's adverse actions. Defendant's conduct constitutes unlawful retaliation in violation of the ADA, 42 U.S.C. § 12203.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff Danielle W. Johns respectfully requests that this Court grant the following relief:

47. Direct Defendant to cease and desist from all discriminatory and retaliatory practices described herein;

48. Award Plaintiff back pay, including lost wages and benefits, from the date of termination through the date of judgment;

49. Award Plaintiff front pay and projected future earnings losses;

50. Award Plaintiff compensatory damages for emotional distress, reputational harm, and career disruption;

51. Award Plaintiff punitive damages for Defendant's willful and intentional conduct;

52. Award Plaintiff costs and fees involved in litigating this case;

53. Issue a declaration that Defendant's conduct violated the Americans with Disabilities Act;

54. Issue an injunction ordering Defendant to implement and enforce lawful accommodation policies and cease discriminatory and retaliatory employment practices;

55. Order Defendant to correct any inaccurate employment records pertaining to Plaintiff, including any misclassification in Defendant's human resources systems;

56. Grant such other and further relief as this Court deems just and appropriate.

**JURY TRIAL DEMANDED** on all issues so triable.

Plaintiff no longer works for Defendant.

Defendant denied Plaintiff's request for reasonable accommodation. Defendant denied Plaintiff's Work From Anywhere Hardship Request on July 24, 2024, characterizing it as a policy violation. Defendant subsequently approved a modified schedule upon Plaintiff's return from medical leave on May 7, 2025, but then used the practical consequences of that approved accommodation as

stated justification for Plaintiff's termination on June 17, 2025 — conduct that was pretextual, discriminatory, and retaliatory in nature. Defendant's approval of accommodations followed by penalization for their exercise reflects a pattern of conduct designed to create the appearance of compliance while undermining Plaintiff's ability to succeed in her role.

Respectfully submitted,

**DANIELLE W. JOHNS**

Plaintiff pro se

61 Sherrin Street

Hyde Park, Massachusetts 02136

daniellej2010@gmail.com

Dated: ___7/6/2026___

**EXHIBITS:**

Exhibit A: EEOC Charge No. 410-2026-01740

Exhibit B: Notice of Right to Sue (issued April 13, 2026)

# EXHIBIT A

## EEOC Charge No. 410-2026-01740



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### CHARGE OF DISCRIMINATION

For Official Use Only – Charge Number:

English - EEOC Form 5A (August 2023)

| | |
|---|---|
| **Personal Information** | First Name: Danielle    MI: W    Last Name: Johns<br>Address: 61 Sherrin Street    Apt.:<br>City: Hyde Park    County: Suffolk    State: MA    Zip Code: 02136<br>Phone: 8572121530    Home ☐ Work ☐ Cell ☑    Email: daniellej2010@gmail.com |
| **Who do you think discriminated against you?** | Employer ☑    Union ☐    Employment Agency ☐    Other Organization ☐<br>Organization Name: Google LLC<br>Address: 1105 W Peachtree St NW    Suite:<br>City: Atlanta    State: GA    Zip Code: 30309    Phone: 4049392356 |
| **Why you think you were discriminated against?** | Race ☐    Color ☐    Religion ☐    Sex ☐    National Origin ☐    Age ☐    Pregnancy ☐<br>Disability ☑    Genetic Information ☐    Retaliation ☑    Other ☐ (specify) |
| **What happened to you that you think was discriminatory?** | Date of <u>most recent job action</u> you think was discriminatory: 6/17/2025<br>Also describe briefly <u>each job action</u> you think was discriminatory and when it happened (estimate).<br>I was terminated on June 17, 2025 because of my disability and in retaliation for concerns I raised internally for related discriminatory behavior. I requested and took medical leave from August 2024 to May 2025 and then returned to work on a modified work schedule. I was terminated while on that modified schedule. In July 2025 I was to return to my normal work schedule. About 1-2 weeks prior to my termination, my manager commended me in a team meeting for my work performance. I submitted 2-3 internal complaints from March to May 2025 citing my manager, Neelima, and the HR representative, Amy, and two members of the sales team I worked alongside, Anu and Paula, for hostile and discriminatory treatment. Google also falsely stated that I did not work for them in an attempt to disqualify me from unemployment insurance. |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br>Signature: _Danielle W Johns_    Date: 12/2/2025 |

## EXHIBIT B

### Notice of Right to Sue

Received April 13, 2026

10

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Atlanta District Office
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/13/2026

**To:** Ms. Danielle W. Johns
61 Sherrin Street
Hyde Park, MA 02136
Charge No: 410-2026-01740

EEOC Representative and email:    ALICIA NEWSOME
INVESTIGATOR
ALICIA.NEWSOME@EEOC.GOV

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 410-2026-01740.

On behalf of the Commission,

Digitally Signed By: Darrell E. Graham
04/13/2026
Darrell E. Graham
District Director

**Cc:**
Na Rae Kim
Littler Mendelson, P.C.
101 Second Street
San Francisco, CA 94105

Nathaniel H Jenkins
Littler Mendelson, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814

Google, LLC
1105 W Peachtree St NW
Atlanta, GA 30309

Adam Colon
Google Inc.
1600 Amphitheatre Parkway
Mountain View, CA 94043

Please retain this Notice for your records.